

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 30, 2017**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIE GARCIA, JR. and | § | CASE NO. 16-50210-RLJ-13 |
| MICHELLE LEA GARCIA, | § | |
| | § | |
| DEBTORS. | § | |

## MEMORANDUM OPINION AND ORDER

The chapter 13 plan of the debtors, Willie and Michelle Garcia, is a 60-month plan that calls for plan payments of $2,500.00 per month for months 1 and 2, and $1,600.00 per month for months 3 through 60.  Of significance here, the Garcias' plan provides for the bifurcation of the claim of PrimeWest Mortgage Corporation; PrimeWest's total claim of $56,283.91 is split into two claims, a secured claim of $25,000.00 and an unsecured claim of $31,283.91.  PrimeWest objects to this treatment, contending that bifurcation is improper because its lien covers real property on which the Garcias' residence is located.[1]  The plan states that PrimeWest's debt is

---

[1] The property is described as a 1.26-acre tract at 6533 County Road 264, Snyder, Texas.

secured by their "principal residence (realty only)" and that such debt "contractually matures before the final plan payment is due. As such, [the] debt is not subject to the anti-modification provisions of 11 USC Sec. 1322(b)(2)." Doc. No. 30 at 12. The Garcias submit, therefore, that the bifurcation of PrimeWest's claim is proper under § 1322(c)(2) of the Code. Such provision allows for *modification* of a claim secured by the debtors' principal residence—which is not otherwise allowed under § 1322(b)(2)—if the term of the debt matures before the end of the plan's term. *See* 11 U.S.C. § 1322(c)(2) (emphasis added). Apart from the treatment of PrimeWest's claim and how such treatment affects the plan's feasibility, the plan otherwise satisfies the provisions of § 1325 for confirmation. *See* 11 U.S.C. § 1325. The Court concludes that bifurcation of PrimeWest's claim is proper but, in doing so, is unable to determine the value of PrimeWest's secured claim. The Court will hold a follow-up hearing and, if necessary, hear additional evidence of the value of the property securing PrimeWest's claim.[2]

### I.

PrimeWest makes two arguments. First, citing the Fourth Circuit's opinion in *In re Witt*, 113 F.3d 508, 513–14 (4th Cir. 1997), PrimeWest argues that a *modification* of its loan under § 1322(c)(2) does not authorize *bifurcation* of the loan. *In re Witt* held that § 1322(c)(2) enables chapter 13 debtors to modify the *timing* of payments to a mortgagee by stretching out the payments over the life of the plan. *Id*. In other words, the payment term, and not the nature of the claim, may be modified. *Id*. Second, PrimeWest argues that if bifurcation is an allowable modification under § 1322(b)(2), only the claim secured by the manufactured home itself, which is personalty, may be bifurcated. This is based on a strict reading of § 1322(b)(2), which provides that a chapter 13 debtor may "modify the rights of holders of secured claims, other than

---

[2] The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (L).

a claim secured only by a security interest in *real property* that is the debtor's principal residence . . . ." § 1322(b)(2) (emphasis added).  The anti-modification rule (or exception) therefore applies explicitly to a claim secured by "real property that is the debtor's principal residence" and not to personalty.  As a creditor holding the claim secured by the manufactured home, Ditech Financial, LLC is subject to having its claim bifurcated, PrimeWest argues.  Ditech has not objected to the plan and is not a party to the dispute here.  (The plan cures a prepetition arrearage owed to Ditech and provides for maintenance of its ongoing post-petition payments.)

      Neither the Garcias nor PrimeWest accounts for the Code's definition of "debtor's principal residence," the critical phrase employed at §§ 1322(b)(2) and (c)(2) of the Code.  Section 101(13)(A) defines the debtor's principal residence as a "residential structure" that is used as the principal residence of the debtor and "without regard to whether that structure . . . is attached to real property."  The definition specifically includes a *mobile or manufactured* home.  *Id*.  And then, to reiterate from § 1322(b)(2), the anti-modification proviso specifically applies to a "claim secured only by . . . property that is the debtor's principal residence."  Here, PrimeWest's lien does not cover the manufactured home that is the "residential structure."  The anti-modification provision of § 1322(b)(2) applies to real property that is the debtor's principal residence.  As PrimeWest argues, under Texas law, a manufactured home is personal property.  *See* Tex. Prop. Code § 2.001.  Its lien covers only the realty; its secured claim is *not* secured by "a security interest in real property that *is* the debtor's principal residence."  Thus both the anti-modification exception of § 1322(b)(2) and *its* exception, § 1322(c)(2), are inapplicable.  *See* 11 U.S.C. §§ 1322(b)(2), (c)(2); *see also In re Johnson*, 269 B.R. 246, 249 (Bankr. M.D. Ala. 2001) ("The land upon which the mobile home sits is separate from the mobile home and does not constitute the Debtors' residence."); *In re Beacham*, No. 05-5109, 2006 WL 565929, at *3

3

(Bankr. M.D. Ga. Feb. 17, 2006) ("The Court is not persuaded that raw land serves as the principal residence as that term is used in section 1322(b)(2)."). The Garcias are therefore free to propose a plan that modifies PrimeWest's secured claim, in accordance with the general rule of § 1322(b)(2). Such modification may provide for bifurcation of the claim if the claim is undersecured, i.e., the value of the property securing the claim is less than the amount of the claim. *See* §§ 506(a)(1), 1322(b)(2).

## II.

The parties' primary dispute is whether PrimeWest's claim is subject to bifurcation. While both the title and prefatory statement of PrimeWest's written objection state that PrimeWest objects to valuation of its collateral, it does not specifically challenge the $25,000 value or offer PrimeWest's statement of value. The parties did, however, anticipate that evidence of value may be necessary as they both offered evidence of value. And given bifurcation, they differ widely on the value of the realty securing PrimeWest's claim and thus the amounts of its claims—secured and unsecured—resulting from the bifurcation. Unfortunately, neither PrimeWest nor the Garcias proffered helpful evidence of value. PrimeWest offered a broker's letter opinion without the broker present to testify. It was offered subject to a hearsay objection; the Court allowed a proffer of the opinion and received the letter subject to being stricken. The broker's written opinion was obtained to support PrimeWest's position here; it does not satisfy the business record exception to hearsay. *See Brauninger v. Motes*, 260 Fed. App'x 634, 637 (5th Cir. 2007) (quoting *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988)). The opinion of value is stricken from evidence. PrimeWest offered no other evidence of value. Mr. Garcia testified as the owner concerning the land's value. He said that after conferring with counsel, he believed the value of the land to be $25,000.00, hence the

amount of the secured claim upon bifurcation.  But Garcia offered nothing more to justify the $25,000.00 value.  He provided no explanation based on his personal knowledge and perception of the property.  The land has an in-ground swimming pool, the construction of which apparently gave rise to the claim held by PrimeWest.  Garcia provided no explanation of how the pool affects the land's value or other concrete evidence of the attributes or deficiencies of the property.

The Court has no credible, reliable evidence of the property's value.

The Garcias contend that the property, PrimeWest's collateral, is worth $25,000; PrimeWest believes the property is worth at least $40,000 and perhaps more than its claim of $56,283.  Value is too critical to the rights of both parties (and potentially to the feasibility of the plan) for the Court to simply guess at a value or to assess a value by default.  Accordingly, the Court will set a status hearing on valuation at which it will, if necessary, hear admissible and reliable evidence of value of PrimeWest's collateral.

It is, therefore,

ORDERED that hearing is set for July 27, 2017, at 9:00 A.M., in Room 314, 1205 Texas Avenue, Lubbock, Texas.

### End of Memorandum Opinion and Order ###